**STATE of Missouri, Respondent,**

v.

**Joseph PORRAS, Appellant.**

**No. WD 60079.**

Missouri Court of Appeals, Western District.

Sept. 17, 2002.

---

Daniel Owen Herrington, Kansas City, MO, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Stephanie Morrell, Asst. Atty. Gen., Jefferson, City, MO, for respondent.

Before HARDWICK, P.J., ELLIS and HOLLIGER, JJ.

LISA WHITE HARDWICK, Judge.

Joseph Porras was charged with two counts of statutory sodomy against his three-year old stepdaughter, D.B. He was convicted by jury on Count I and acquitted on Count II. On appeal, Mr. Porras asserts the trial court erred in admitting evidence of D.B.'s out-of-court statements pursuant to § 491.075,[1] in submitting Count II to the jury after D.B. recanted facts supporting that charge, and in failing to remind the jury to consider the two counts separately after it initially deadlocked during deliberations. We affirm.

**Factual and Procedural Background**

D.B., born August 4, 1995, is the daughter of Misty Porras. In July 1999, while in the car on the way home from a theatre show with her mother and maternal grandparents, D.B. said that her stepfather, Joseph Porras, had made her "eat his body" and he "ate her body, too."[2] D.B. said Mr. Porras had "peed in [her] mouth and he said it would taste like Sprite, but it didn't; it was yucky." When confronted by Misty Porras that evening, Mr. Porras denied D.B.'s allegations.

The following morning, D.B. told her grandmother that Mr. Porras' "body" looked like "grass." When her grandmother asked how Mr. Porras made her "eat his body," D.B. "put her hands together and did kind of a chewing sound." D.B. said Mr. Porras had slapped her and warned her not to tell what happened between them or he would slap her again.

After conversations with family members about D.B.'s statements, Mr. Porras called the Division of Family Services (DFS) to report the allegations. He spoke to a DFS investigator, Carrie Hayward, telling her the only thing he knew that may have prompted the statements from D.B. was that he had washed her mouth out with soap a few days before for telling lies.

In an interview with Ms. Hayward, D.B. said she called her private parts "the body." D.B. said Mr. Porras made her "eat his body" but told her not to bite it, and that his body looked like "grass." She also said Mr. Porras forbid her to tell her grandparents about the encounter. Based on D.B.'s statements during the interview, Ms. Hayward referred her to the Child Protection Center (CPC) at Children's Mercy Hospital.

D.B. met with Julie Donelson, a social worker at CPC, on August 10, 1999. In a

---

1. All statutory references are to Missouri Revised Statutes 2000, unless otherwise noted.

2. D.B. referred to male and female genital areas as the "body."

taped interview, D.B. confirmed the prior statements made to her mother, grandparents, and DFS. That same day, a physician performed a Sexual Assault Forensic Examination (SAFE) on D.B. The examination was normal, with no signs of trauma or infection.

Kristen King, a licensed clinical therapist, began conducting therapy sessions with D.B. in March 2000. During the course of those sessions, D.B. volunteered that Mr. Porras had touched her bottom and kissed her vagina and her bottom. D.B. told the therapist Mr. Porras had lied when he told his wife, Misty Porras, that he had not touched D.B.

On February 24, 2002, Mr. Porras was charged with two counts of statutory sodomy in violation of § 566.062. Count I alleged he placed his mouth on D.B.'s genitals. Count II alleged he had D.B. place her mouth on his penis.

On March 12, 2001, the court held a pretrial hearing, pursuant to § 491.075, to consider the State's motion to admit D.B.'s out-of-court statements to her mother, grandparents, the DFS employee, the social worker, and the therapist as substantive evidence of sexual abuse by Mr. Porras. Following the testimony of these witnesses as recounted above, and over the objections of defense counsel, the court ruled the out-of-court statements were admissible.

At trial, D.B. testified that Mr. Porras had touched her genital area with his mouth. Contrary to her pretrial statements, D.B. denied that she ever touched his genitals. The State presented the witnesses from the pretrial hearing, who testified about D.B.'s out-of-court statements. Mr. Porras also testified at trial. He denied the sodomy charges, claiming D.B. fabricated the allegations to get back at him for washing her mouth out with soap.

Both sodomy counts were submitted to the jury. During deliberations, the jury stopped twice to report that it had deadlocked at "8–4" and was unable to reach a unanimous verdict. Upon agreement of counsel, the court issued a "hammer instruction," MAI CR3d 312.10. The jury subsequently returned a guilty verdict on Count I and an acquittal on Count II. Mr. Porras was sentenced to ten years imprisonment on Count I. He appeals.

## Admissibility of D.B.'s Out-of-Court Statements

Mr. Porras asserts the trial court incorrectly applied the law in conducting the § 491.075 hearing by placing the burden on the defense to show that D.B.'s hearsay statements were unreliable and inadmissible. Based on this misapplication of law, he claims the hearsay statements were erroneously admitted into evidence.

Our review of the trial court's decision to admit hearsay testimony under § 491.075 is limited to a determination of whether the court abused its discretion. *State v. Werneke*, 958 S.W.2d 314, 318 (Mo.App. W.D.1997). Although the trial court's evidentiary findings warrant deference from this court, no deference is required where the law has been applied in error. *St. Louis Univ. v. Hesselberg Drug Co.*, 35 S.W.3d 451, 454 (Mo.App. E.D. 2000). We review all determinations of law *de novo. Id.*

Enacted as an exception to the exclusionary hearsay rule, § 491.075 permits witnesses to testify regarding the out-of-court statements of a child sodomy victim if the statements are shown to be sufficiently reliable. The statute provides in relevant part:

1. A statement made by a child under the age of twelve relating to an offense under Chapter 565, 566 or 568,

RSMo, performed with or on a child by another, not otherwise admissible by statute or court rule, is admissible in evidence in criminal proceedings in the courts of this state as substantive evidence to prove the truth of the matter asserted if:

(1) The court finds, in a hearing conducted outside the presence of the jury that the time, content and circumstances of the statement provide sufficient indicia of reliability; and

(2)(a) The child testifies at the proceedings....

§ 491.075.1. As with any exception to the hearsay rule, the proponent of a child's out-of-court statement has the initial burden of making a sufficient showing of reliability to render the statement admissible. See *e.g. State v. Post*, 901 S.W.2d 231, 234 (Mo.App. E.D.1995).

■ In determining the reliability of a child's out-of-court statements for purposes of Section 491.075, Missouri courts have adopted a totality of circumstances test which includes consideration of several non-exclusive factors taken from *Idaho v. Wright*, 497 U.S. 805, 821, 110 S.Ct. 3139, 111 L.Ed.2d 638 (1990):(1) spontaneity and consistent repetition; (2) the mental state of the declarant; (3) the lack of a motive to fabricate; and (4) knowledge of subject matter unexpected of a child of similar age. *State v. Redman*, 916 S.W.2d 787, 790–91 (Mo.banc 1996). These factors assist the trial court in determining whether the statements have "particularized guarantees of trustworthiness." *Werneke*, 958 S.W.2d at 318 (quoting *Wright*, 497 U.S. at 816–19, 110 S.Ct. 3139).

At the pretrial hearing conducted pursuant to § 491.075, the State presented testimony from D.B.'s mother, grandparents, the DFS employee, the social worker, and the therapist regarding D.B.'s allegations of sexual abuse. The court then invited argument from counsel as to whether the testimony was admissible at trial. Mr. Porras points to the following excerpts from the hearing transcript in support of his argument that the court improperly placed a burden on the defense to prove unreliability:

THE COURT: Let's take up the motion to present evidence in the form of out-of-court statements by the victim through various witnesses. Here's how I would suggest we proceed on this. It appears to me that 491.075—since I've never handled one of these cases before, I may be all wet on this, but it seems to me like it establishes an exception to the hearsay rule and since the question is whether I'm going to exclude this evidence, *I think presumptively it goes in unless it is objectionable*, and therefore I think it makes sense to start out with the defendant stating his objection to the admissibility of the evidence and the basis for that objection, and then the state can tell me its position about the objection by the defendant. Make sense?

DEFENSE COUNSEL: That's fine with me, Judge.

THE COURT: Let's do it that way.

After argument by counsel for both parties, the court gave the following explanation for its ruling that the evidence was admissible:

THE COURT: I am troubled by the whole concept behind 491.075. It just grates, I guess, on my educational background, which was that hearsay, unless it is within a very well-recognized exception that pretty well guarantees the reliability of the out-of-court statement, should not be admitted, but there is a statute that the Missouri Legislature has enacted that

I'm sworn to uphold and given the fact that there is that statute, I have to apply the criteria that the Missouri Supreme Court and, it looks like, the United States Supreme Court in *Idaho v. Wright* said I must apply in cases of this kind.

In other words, it seems to me like the factors that are set out in *Redman* and *Idaho v. Wright* are to be used in conjunction with 491.075, and I do not believe there is inconsistency in the statements. I think there is a fundamental difference between inconsistency and describing different details at different times.

And I recognize, [Defense Counsel] that [D.B.] may not have been as detailed on some occasions, but I don't think that renders the statements inconsistent. I think ultimately the Legislature has mandated that we invest in the trier of fact the ability to weigh evidence when there are out-of-court statements, and I think many of the arguments that you've made may very well be persuasive with a jury in this case since the jury is going to be the ultimate finder of fact, but I think there is a fundamental distinction between the admissibility of evidence and its weight, and *I believe I have no choice under 491.075 but to hold that the evidence comes in.*

And I'm focusing not only on the first factors, spontaneity consistent repetition, but also I've heard nothing about the mental state of the declarant thus far that would indicate to me that her testimony was unreliable, I've heard nothing in the 491 hearing about a motive to fabricate, and I understand there may be some evidence later on about that which the jury may very well choose to believe, but again, I think that goes to the weight of the evidence and not the admissibility.

Finally, I think as I read both the state's brief and the defendant's brief, this factor of use of terminology unexpected of a child of similar age as interpreted by the *Redman* case is persuasive to indicate that the evidence goes in, so I am going to permit the various witnesses who testified during the 491.075 hearing to testify about the statements they claim were made to them by [D.B.].

Mr. Porras argues that § 491.075 creates a presumption that a child's out-of-court statement is inadmissible and places the "burden of proof" on the proponent of the statements to show reliability. Citing *State v. Jankiewicz*, 831 S.W.2d 195, 199 (Mo.banc 1992), he contends the trial court committed reversible error in this case by declaring the statements "presumptively" admissible and requiring the defense to prove the unreliability of the hearsay testimony.

■ We disagree with this interpretation of § 491.075 and the application of *Jankiewicz* to the facts of this case. The plain language of § 491.075 requires the court to conduct a hearing to determine whether a child's out-of-court statements have sufficient indicia of reliability. The statute does not impose a burden on either party to *prove* reliability or unreliability. It simply requires the proponent of the hearsay statement to come forward with evidence that appears circumstantially reliable. Nor does the statute require the court to initially presume the evidence is unreliable or inadmissible, particularly where the child is available for cross-examination. In *Jankiewicz*, the court held that a child's hearsay statements were "presumptively unreliable and inadmissible for Confrontation Clause purposes" where the child is *unavailable* to testify at trial. 831 S.W.2d at 198 (quoting *Idaho v.*

*Wright,* 497 U.S. at 818, 110 S.Ct. 3139 (emphasis added)). That holding is inapplicable here because D.B. was available to testify and, in fact, testified at trial and was cross-examined by the defense.

In this case, the trial court fulfilled the requirements of § 491.075 by conducting a hearing at which the State presented testimony on D.B.'s out-of-court statements. The court then allowed the defense to proffer any objections to the reliability of the hearsay testimony. After the State's response, the court gave a detailed explanation and legal analysis as to why the evidence was reliable and, therefore, admissible in light of the four *Redman* factors.

Contrary to the argument on appeal, the court did not prejudice Mr. Porras in presuming the hearsay statements admissible *after* it heard the witnesses' testimony. The timing of the comment indicates the court had made a preliminary decision that the reliability of the statements was apparent from circumstances attested to by the witnesses. Once the State met its initial burden of production by showing sufficient indicia of reliability, the evidence was presumptively admissible pursuant to § 491.075.

▮▮▮▮ The trial court never imposed a "burden of proof"[3] nor required the defense to present evidence showing the hearsay statements were unreliable. The defense was merely asked to state its objections and argue whether the evidence met the *Redman* test. Ultimately, the court determined it had "no choice" but to admit the hearsay testimony under § 491.075 because D.B.'s statements satisfied the four factor test—and not because the defense failed to meet any burden.

On appeal, Mr. Porras does not dispute the sufficiency of the testimony to support the court's determination of reliability. He only asserts the testimony was erroneously admitted because the court misplaced the burden of proof on the defense. We find no prejudicial error in the court's procedure and no abuse of its discretion in admitting D.B.'s out-of-court statements. Point I is denied.

### Submission of Count II

▮▮▮▮ Count II of the Information alleged that Mr. Porras committed statutory sodomy by having D.B. place her mouth on his penis. D.B. had told her mother, grandparents, and the DFS investigator about this conduct, but at trial D.B. denied the conduct occurred. The trial court nonetheless submitted Count II to the jury based on the witnesses' testimony regarding D.B.'s out-of-court statements.

On appeal, Mr. Porras claims the court erred in allowing the jury to consider the Count II sodomy because D.B. recanted the facts underlying that charge. Our review of this claim is limited to whether Count II was supported by sufficient evidence such that the jury could have found him guilty. *State v. Pierce,* 906 S.W.2d 729, 730 (Mo.App. W.D.1995). Although Mr. Porras was acquitted on Count II, he asserts the evidence on that charge may

---

**3.** We note that a "burden of proof" is applied to a party who has the ultimate obligation to convince a fact finder that a proposition is more or less true. This is distinguishable from a burden of production, which merely obligates a party to come forward with evidence to support an allegation without regard for whether the party can ultimately prove the allegation. See, e.g., *State v. Johnson,* 930 S.W.2d 456, 460 (Mo.App. W.D.1996) (burden of production on Batson challenge); *State v. Jackson,* 809 S.W.2d 77, 81 (Mo.App. E.D. 1991) (distinguishing burden of production and burden of persuasion). The trial court properly applied a burden of production in this case by requiring the State to come forward with evidence showing the child's out-of-court statements were reliable.

have confused and prejudiced the jury to reach a compromise verdict, resulting in his conviction on Count I. Mr. Porras further claims the court plainly erred in failing to remind the jury to give separate consideration to Counts I and II after it initially deadlocked at 8–4.[4] We have discretion to review this unpreserved claim for manifest injustice under Rule 30.20.[5]

We previously considered similar claims of prejudicial error in *State v. Werneke*, 958 S.W.2d 314. Defendant Werneke was charged with one count of statutory sodomy and one count of child molestation. The charges arose from statements the child victim had made to relatives, friends, and investigators alleging sexual abuse by her stepfather, Werneke. *Id.* at 316. At trial, the child recanted her allegations relative to Count I, but the witnesses testified to the child's out-of-court statements in support of the sodomy allegations. *Id.* at 319. The trial court submitted both counts to the jury. *Id.* at 318. Werneke was convicted of child molestation on Count II. *Id.* The jury was unable to reach a verdict on the Count I sodomy, on which the child's allegations were inconsistent. *Id.* The trial court declared a mistrial on Count I. *Id.*

On appeal, this court noted there was sufficient evidence to submit the sodomy charge based on the out-of-court statements, which were not determined to be unreliable or otherwise inadmissible. *Id.* at 320. We ruled that even if the jury

submission had been erroneous, no prejudice resulted because Werneke was not convicted on the Count I sodomy charge. *Id.*

Like *Werneke*, Mr. Porras was not convicted on the Count II sodomy charge, which he claims should not have been submitted to the jury. There is no indication the jury was confused by the two sodomy counts submitted because it was able to convict on Count I and acquit on Count II.[6] *Id.* "This difference in result on the two counts shows the jury's careful consideration of the evidence and its ability to understand that guilt on one count did not require a finding of guilt on the other count, and vice versa." *Id.*

Mr. Porras' reliance on this court's reversal in *State v. Pierce*, 906 S.W.2d 729, is misplaced. In *Pierce*, a victim recanted her statutory rape allegations, but a DFS worker was permitted to testify at trial about the victim's out-of-court statements. *Id.* at 731–33. The jury convicted the defendant of statutory rape. On appeal, the conviction was reversed because the single out-of-court statement was uncorroborated, unreliable, and insufficient to prove the defendant's guilt beyond a reasonable doubt. *Id.* at 735.

D.B.'s out-of-court statements, relative to the Count II sodomy, were attested to by at least four witnesses at trial. Unlike *Pierce*, the hearsay testimony was substantially corroborated by multiple observ-

---

**4.** Prior to deliberations, the court instructed the jury to consider the two counts separately. Mr. Porras argues the jury should have been given this instruction again each time after it announced the 8–4 deadlock.

**5.** All rule citations are to the Missouri Rules of Criminal Procedure 2002, unless otherwise noted.

**6.** Mr. Porras argues the jury showed confusion when it stopped deliberations twice to

inform the court it could not reach a unanimous verdict. The court gave the hammer instruction, MAI CR3d 312.10, and the jury ultimately rendered a verdict. The jury never informed the court that it could not distinguish between the two counts. The record does not support Mr. Porras' speculation on appeal that the jury was initially unable to reach a verdict because it was not considering the counts separately.

ers and satisfied due process considerations of reliability. We find no error—plain or prejudicial—because the witness testimony was sufficient for the trial court to submit Count II, and the jury was clearly able to distinguish between the evidence on the two counts submitted. Mr. Porras' acquittal on Count II indicates no reminder was necessary to ensure the jury considered it independently of Count I. Thus, we decline to grant plain error review. Points II and III on appeal are denied.

The trial court's judgment is affirmed.

All concur.